IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SUNNY L. JOHNSON,

      Plaintiff,

vs.                                 No. 11-CV-00366 MCA/WDS

GENWORTH FINANCIAL HOME
EQUITY, INC., et al.,

      Defendants.

## ORDER

This matter is before the Court upon the *Motion to Dismiss Complaint* [Doc. 16] of Defendants Bank of America, N.A., Deutsche Bank and Trust Company Americas, BAC Home Loans Servicing, LP, and Landsafe Appraisal Services.  The Court has considered Defendant's motion and reply [Doc. 35], Plaintiff's response [Doc. 24], the record in this matter, the applicable law, and is otherwise fully advised.

**DISCUSSION**

**Rule 12(b)(6) Standards**

Fed. Civ. P. Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In ruling on a motion to dismiss brought pursuant to Fed. Civ. P. Rule 12(b)(6), a court decides whether the allegations of the plaintiff's complaint are legally sufficient to state a claim upon which relief may be granted under the standard of Rule 8(a)(2).  *Phillips v. Bell*, 365 Fed. Appx. 133, 137-38 (10th Cir. 2010) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  For decades, Rule 12(b)(6) motions were governed by a test taken from *Conley v. Gibson*, 355 U.S. 41 (1957):  a complaint

was subject to dismissal pursuant to Rule 12(b)(6) only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011) (quoting *Conley*, 355 U.S. at 45-46;  internal quotation marks omitted).  In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Court retired *Conley*'s test, replacing it with a new standard:  "to withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Collins*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 570)).  In applying this standard, a court accepts as true all "plausible, non-conclusory, and non-speculative" facts alleged in the plaintiff's complaint.  *Shrader v. A1 Biddinger,* 633 F.3d 1235, 1243 (10th Cir. 2011).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *Ashcroft v. Iqbal*, 556U.S. 662, __, 129 S. Ct. 1037, 1949 (2009).  Moreover, "'a formulaic recitation of the elements of a  cause of action' will not suffice;  a plaintiff must offer specific factual allegations to support each claim" that "'raise a right of relief above the speculative level." *Collins*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 555).   In short, in ruling on a 12(b)(6) motion, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Collins*,  656 F.3d at 1214.

**Background**

Applying the standards set out above, the Court will summarize the material allegations of Plaintiff's complaint.

Plaintiff resides in a home subject to a first mortgage held by Deutsche Bank and

2

serviced by BAC.  This mortgage secures a loan originally made by Bank of America to Plaintiff's son.  In 2010, Plaintiff's son declared bankruptcy.  At the time, the unpaid balance on the loan was approximately $83,000.  Plaintiff claims to have acquired her son's interest in the property through a deed in lieu of foreclosure. Plaintiff made three payments on her son's loan. BAC nevertheless declared the son's loan to be in default,  refused to accept further payments, and has proceeded with foreclosure of the mortgage.

Plaintiff has invested over $40,000 in materials and labor in the property, apparently to convert the property from a single-family dwelling into a fourplex.

In September 2010, Plaintiff submitted an application for a loan to Defendant Genworth Financial Home Equity Access, Inc.  The loan was to be secured by a federally-insured reverse mortgage. Genworth obtained an appraisal. Genworth had "no problems" with the appraisal, but nevertheless rejected Plaintiff's application in November 2010.  Genworth advised Plaintiff that it had rejected her application because there was no secondary market for her note and mortgage.

In November 2010, following Genworth's rejection of her application, Plaintiff submitted a loan application to Bank of America. Although the property had been appraised in the course of  Plaintiff's recent and  unsuccessful attempt to obtain a loan from Genworth,  Bank of America required a second appraisal.[1]  Bank of America ordered the second appraisal from Landsafe, a wholly owned subsidiary of Bank of America. Landsafe retained appraiser Wayne

---

[1]The FHA requires that a first appraisal be provided to and used by a second lender, except in limited circumstances, such as when the second lender's underwriter determines that a first appraisal contains material deficiencies.  [Doc. 24, Ex. C (letter dated September 18, 2009 from David H. Stevens, Assistant Secretary for Housing-Federal Housing Commissioner, to approved mortgagees and roster appraisers)].

Solomon to conduct the appraisal.[2]  Plaintiff maintained that the property was a fourplex, and during the appraisal pointed out the separate living areas to Mr. Solomon.  Based on the appraisal, Bank of America concluded that Plaintiff's property was "overbuilt" for a single family dwelling and rejected Plaintiff's loan application. In correspondence with Plaintiff, Bank of American stated that:

> information in the [Landsafe appraisal] report, and other information indicated that the site and its structural improvements reflect a "complex assignment", that there is indicated income derived from renters, each inhabiting a "compartment" within the exterior walls of the structure.  As such, the improvements do not meet stated guidelines as set forth in [HUD Housing Handbook sections] 4150.2 or 4905.01 or meet intent of HUD financing for single family residential properties or its reverse mortgage program.

Following Bank of America's rejection of her loan application, Plaintiff applied for a loan from MetLife Bank, N.A.[3] MetLife obtained a copy of the appraisal and field review report prepared by Landsafe.  Based on these documents MetLife rejected Plaintiff's loan application.

**Analysis**

The clear weight of authority holds that "the N[ational]H[ousing] A[ct] and attending regulations do not expressly or implicitly create a private right of action to mortgagors for a mortgagee's noncompliance with the Act or regulations." *Shirk v. JPMorgan Chase Bank*, 437 B.R. 592, 607-08 (S.D. Ohio. 2010) (collecting authorities). In her response, and consistent with the weight of authority establishing that she has no direct cause of action under federal law, Plaintiff states that she "is not bringing this action under a complaint of violation of HUD

---

[2]A mortgagee must select an appraiser from a roster of appraisers maintained by HUD if the property to be appraised is to be security for an FHA-insured  mortgage. 24 C.F.R. § 200.200.

[3]Metlife was named as a defendant, but has been dismissed [Docs.  29, 30].

Guidelines but rather by asserting that Defendants violated [the] New Mexico Unfair Practices Act . . . ." [Doc. 24 at 9] The NMUPA defines an unfair or deceptive trade practice as " a false or misleading oral or written statement. . . or other representation of any kind knowingly made [1] in connection with the sale, lease, rental, or loan of goods or services or [2] in the extension of credit . . . by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person. . . ."  NMSA 1978, § 57-12-2(D).  "*Knowingly*" is the *mens rea* required by the NMUPA  to render a misrepresentation actionable. *See Richardson Ford Sales, Inc. v. Johnson*, 100 N.M. 779, 782-83 (Ct. App. 1984).

As preliminary matters, the Court rejects Defendants' arguments that the NMUPA is inapplicable to extensions of credit made in connection with real estate transactions, or that it is inapplicable to loan applications. [Doc. 35 at 4, 5]  There is nothing in the plain language of NMUPA that expressly excludes an extension of credit from the coverage of NMUPA merely because it is secured by a lien on real estate.  In the leading New Mexico case,  *McElhannon v. Ford*, 134 N.M. 124, 128 (Ct. App. 2003), the New Mexico Court of Appeals held that a completed house was realty, not goods or services, and therefore a sale of a house did not fit within the phrase "in connection with the sale, lease, rental or loan of goods or services" used by the Legislature in defining an unfair or deceptive trade practice.  *McElhannon*'s rationale has no applicability to "the extension of credit," an entirely different category of transactions separated by "or" from the preceding phrase "in connection with the sale, lease, rental or loan of goods or services." The Court likewise rejects Defendants' argument that the NMUPA does not apply to an unconsummated extension of credit. The NMUPA proscribes false or misleading statements "in the extension of credit." Section 57-12-2(D). "Extend," the root of "extension," clearly

5

includes the act of offering something, such as credit. *Encarta World English Dict.* 629-30
(Kathy Rooney, ed.-in-chief. 1999).  Thus, the Court concludes that false or misleading
statements to a loan applicant, if knowingly made, can constitute an unfair or deceptive trade
practice.

Congress has provided for federal insurance of  home equity conversion mortgages
(HECMs), more familiarly known as "reverse mortgages."  12 U.S.C. § 1715z-20.  To qualify for
the HECM program, the mortgaged property must be "a dwelling that is designed principally for
a 1- to 4-family residence in which the mortgagor occupies 1 of  the units."  12 U.S.C. § 1715z-
20(d)(2)(a) and (3); 24 C.F.R. § 206.45(b).[4]  Plaintiff's complaint proceeds on the assumption
that any appraisal that disagrees with her unilateral characterization of her property as a fourplex
is necessarily false and misleading.  [Doc. 24 at 9 ("Bank of America and Landsafe ignored
HUD guidelines while falsely telling Plaintiff that they were following them. . . .")] The portion
of the appraisal report quoted in Plaintiff's complaint [Doc. 1-2 at 3-4, ¶ 9] shows that Landsafe
clearly recognized that Plaintiff's property is divided into multiple living units, but that it
engaged in its own analysis rather than accepting Plaintiff's unilateral assertion that her
renovations resulted in the creation of multiple living units acceptable to HUD.  This point is
borne out by the reference to HUD Handbooks  4150.2 (Valuation Analysis for Single Family
One- to Four- Unit Dwellings) and 4905.01 (Requirements for Existing Housing One to Four
Family Units) in the portion of Bank of America's letter to Plaintiff quoted in the complaint.
These guidelines set out requirements that individual units in a multi-family dwelling must meet

---

[4]Section 1715x-20(d) was amended in 1996 to extend the HECM program from 1-family
residences to 1- to 4-family residences.  12 U.S.C.A. § 1715z-20, Historical and Statutory Notes
to 1996 Amendments.

in order for the property to be eligible under the HECM program as well as the  protocols that an appraiser must follow in conducting an appraisal. By way of example, HUD Handbook  § 4905.1 (2-9) requires that "[e]ach living unit must be provided with space necessary to assure suitable living, sleeping, cooking an dining accommodations and sanitary facilities."   In the absence of well-pleaded grounds for concluding that Plaintiff is familiar with applicable HUD guidelines, Plaintiff's belief that her property qualifies as a 4-family dwelling for purposes of  HUD's HECM program does not give rise to a plausible inference that Bank of America's characterization of her property as an "overbuilt" single family dwelling [Doc. 1-2 at 3, ¶ 9] was incorrect, much less that the appraisal *knowingly* misrepresented the condition or value of Plaintiff's property.  At best Plaintiff has alleged a dispute between herself and Bank of American/Landsafe/Wayne Solomon as to the condition and value of her property.

Plaintiff's allegations that Bank of America will be unjustly enriched  if  allowed to foreclose the mortgage on Plaintiff's property or that foreclosure by Deutsche Bank would be in violation of the NMUPA are pure legal conclusions.  The complaint alleges no plausible factual basis, and Plaintiff's response provides no colorable legal argument, supporting these claims. Under *Twombly,* these conclusory allegations may be disregarded by the Court in ruling upon Defendants' motion to dismiss.

Plaintiff's claim against BAC is similarly flawed.  Plaintiff  has not attached the loan documents that BAC is servicing, nor has she alleged any of the terms of the loan or mortgage that BAC is servicing.  The complaint alleges no plausible factual basis, and Plaintiff's response provides no colorable legal argument, supporting her claim against BAC.

Plaintiff's complaint is subject to dismissal to the extent Plaintiff seeks injunctive relief to

address past instances of unfair or deceptive practices.  Section 57-12-10(A) states that "[a]

person likely *to be* damaged by an unfair or deceptive trade practice . . . may be granted an

injunction against it under the principles of equity and on terms the court considers reasonable."

(Emphasis added).  Courts construing this language have concluded that it reaches only future

instances of unfair and deceptive practices, and is not available to redress damage caused by

past instances of unfair or deceptive practices.  *E.g. Reinbrecht v. Walgreen Co*,  742 N.W.2d

243, 248 (Neb. Ct. App. 2007) (observing that Nebraska Uniform Deceptive Trade Practices Act

"provides relief from future damages, not past damage");  *Independent Glass Assoc. v. Safelite*

*Group, Inc.*, No. Civ. 05-238ADMFLN, 2005 WL 3079084 (D. Minn. Nov. 16, 2005) (observing

that a plaintiff must allege facts that demonstrate a risk of future harm to obtain an injunction

under the Minnesota Deceptive Trade Practices Act); *Sebago, Inc. v. Beazer East, Inc.*, 18 F.

Supp. 2d 70 (D. Mass. 1998) (concluding that the Massachusetts Uniform Deceptive Trade

Practices Act "only provides injunctive relief to guard against future harm rather than to remedy

a past wrong";  *Brooks v. Midas-Int'l Corp.*, 361 N.E.2d 815, 821 (Ill. Ct. App. 1977)

(observing that injunction under Illinois Deceptive Trade Practices Act does not reach harm that

has already occurred). Thus, in  affording Plaintiff injunctive relief pursuant to § 57-12-10(A),

the Court cannot order BAC to undo actions it has already taken or order Bank of America

to"revisit" a loan application that Bank of American has already denied.

In her response, Plaintiff has introduced new theories of wrongdoing that are not fairly

encompassed by the allegations of her complaint.  "[I]t is axiomatic that the complaint may not

be amended by the briefs in opposition to a motion to dismiss."  *Car Carriers, Inc. v. Ford*

*Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).  Accordingly, the Court has not considered

unpleaded allegations in ruling on Defendants' motion to dismiss. *Id.* (observing that "consideration of a motion to dismiss is limited to the pleadings").

 **CONCLUSION**

Defendants have established their entitlement to dismissal of Plaintiff's complaint. However, dismissal will be without prejudice. *See generally Staats v. Cobb*, No. 11-6172, 2011 WL 5926105 (10th Cir. Nov. 29, 2011) ("We have previously explained that a court 'should dismiss *with leave to amend* . . . if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief.'") (quoting *Bever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994)).

No later than fourteen days from the date of entry of this Order on the Court's docket, Plaintiff may move the Court for leave to file an amended complaint.  A copy of any proposed amended pleading must be attached to the motion to amend as required by D.N.M. LR-Civ. 15.1. In allowing Plaintiff to file a motion seeking leave to file an amended complaint, the Court is not at this time granting Plaintiff leave to file an amended complaint.  Before allowing any proposed amended  complaint to be filed, the Court will carefully review it and must be satisfied that the filing of the amended complaint would not be futile.   "The district court is not required to grant leave to amend, however, if amendment would be futile.  'A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.'"  *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*,  521 F.3d 1278, 1288 (10th Cir. 2008).  As provided by D.N.M. LR-Civ. 7 governing motion practice, Defendants will have an opportunity to respond to Plaintiff's motion to amend.

 **IT IS THEREFORE HEREBY ORDERED** that the *Motion to Dismiss Complaint*

[Doc. 16] of Defendants, Bank of America, N.A., Deutsche Bank and Trust Company Americas, BAC Home Loans Servicing, LP, and Landsafe Appraisal Services is **granted** and that the complaint is **dismissed without prejudice**.

   **IT IS FURTHER ORDERED** that Plaintiff, Sunny L. Johnson, is granted leave to file a motion to filed an amended complaint, said motion to be filed within fourteen days from the date of the filing of this Order.

   **SO ORDERED** this 19th day of March, 2011.


           M. CHRISTINA ARMIJO
           UNITED STATES DISTRICT JUDGE